**The below described is SIGNED.**

**Dated: July 26, 2013**

*William T. Thurman*
**WILLIAM T. THURMAN**
U.S. Bankruptcy Judge



*rdr*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **In re:**<br><br>**ROBERT TODD JENSEN** and **JOANN JENSEN,**<br><br>Debtors. | Bankruptcy No. 12-33826<br><br>Chapter 13<br><br>**Chief Judge William T. Thurman** |

**MEMORANDUM DECISION**

The matter before the Court is the confirmation of the Chapter 13 Plan ("Plan") of Robert and JoAnn Jensen (the "Debtors" or "Robert" and "JoAnn" individually) dated November 1, 2012. Through counsel, the Chapter 13 Trustee filed an objection to the Plan on December 6, 2012 and filed continuing objections on January 23, 2013 and March 22, 2013. In all of those objections, the Trustee argued that the Plan should not be confirmed because, *inter alia*, the Debtors were improperly calculating their disposable income as required in § 707(b) and § 1325(b).[1]

For above median debtors, disposable income is calculated by fully completing the Chapter

---

[1] All subsequent statutory references are to Title 11 of the United States Code unless otherwise indicated.

13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C").[2] Here, the Debtors are taking a deduction on Line 55 of Form 22C for voluntary retirement contributions begun within three months prior to the date of petition. The Trustee objected specifically that the Debtors must establish that they filed their petition in good faith and that they did not initiate the voluntary retirement contributions for the sole purpose of maximizing the deductions on Form 22C.

The Court conducted several hearings on this matter and has received and reviewed briefs from the parties. At the most recent hearing on May 9, 2013, the Court heard oral argument from David T. Berry on behalf of the Debtors and from Kevin R. Anderson, the Chapter 13 Trustee (the "Trustee"). At the conclusion of the hearing, the Court took the matter under advisement.

As an apparent issue of first impression in this Court, the question presented by this case is whether voluntary contributions to a qualified retirement plan constitute disposable income for purposes of a chapter 13 plan.

The Court has carefully considered the parties' briefs and memoranda, the statutory authority, and case law and has conducted its own independent research of the law. The Court issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 9014 and 7052.

I.     **JURISDICTION AND VENUE**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The confirmation of a chapter 13 plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). Venue is properly laid in

---

[2] *Zeman v. Liehr (In re Liehr)*, 439 B.R. 179, 181 (B.A.P. 10th Cir. 2010).

this District under 28 U.S.C. § 1408.

## II. BACKGROUND AND FINDINGS OF FACT

The Debtors began this case by filing a voluntary petition for relief under chapter 13 of the Bankruptcy Code on October 31, 2012. Their Form 22C, filed on November 14, 2012, listed a current monthly income of $6,360.89, which, when annualized, places them over the median income threshold for a family of three in Utah.[3] Form 22C also listed a qualified retirement deduction on Line 55 in the amount of $541.67. The Debtors' monthly disposable income on Line 59 was calculated as -$180.74. The Debtors filed an Amended Form 22C on January 31, 2013, which did not change the deduction for the voluntary retirement contribution, but did reduce a Line 57 deduction for an old car expense by $50, thereby changing Debtors' monthly disposable income to -$130.74.

The $541.67 deduction on Line 55 represents the average monthly contribution Debtor JoAnn Jensen makes to her employer-sponsored retirement plan under § 457 of the Internal Revenue Code.[4] JoAnn had not made any contributions to her retirement plan during 2012 until she initiated contributions commencing with the August 6, 2012 pay period,[5] which was less than three months prior to the date of petition. According to the Debtors, there were two reasons motivating them to

---

[3] For cases filed between May 1, 2012 and October 31, 2012, inclusive, the median family income for a family of three in Utah is $61,508. U.S. Dep't of Justice, Census Bureau Median Family Income by Family Size, http://www.justice.gov/ust/eo/bapcpa/20120501/bci_data/median_income_table.htm (last visited July 21, 2013).

[4] 26 U.S.C. § 457. Jensen receives a paycheck every two weeks, from which her employer deducts $250 as a contribution to her retirement plan. When multiplied by 26 and divided by 12, that amount yields an average monthly contribution of $541.67.

[5] Stipulated Facts Regarding 457 Retirement Payroll Deductions, Docket No. 32, at ¶ 7.

begin making contributions at that time. First, when JoAnn's sister passed away earlier that summer, she did not leave her family with any savings, which gave the Debtors some degree of concern for themselves. Second, the Debtors were concerned that Social Security might run out of funds by the time they applied for it.[6] JoAnn has been with the same employer since 1989,[7] and Debtors are approximately 48 and 47 years old.[8]

JoAnn has continued making contributions to her retirement plan through her paycheck dated April 30, 2013. Debtor Robert Jensen is not contributing to a retirement plan.[9]

Debtors' Plan proposes payments of $130 per month for 44 months and $418 per month for 16 months. Unsecured creditors will receive a return from the "plan base,"[10] meaning that Debtors are required to make monthly plan payments for the duration of the 60-month commitment period. Once all other disbursements provided for in the Plan have been paid in full, the remaing balance, if any, will be apportioned among the nonpriority unsecured creditors according to their pro rata share. As stated by the Trustee, the proposed plan base totals $12,408 plus tax refunds.[11] After deducting secured and administrative claims, the Trustee estimates that $2,352 will be available for distribution to unsecured creditors, with the caveat that that figure may increase with the receipt of

---

[6] *Id*. at ¶ 9.

[7] *See* Debtors' Schedule I, Docket No. 10.

[8] Stipulated Facts Regarding 457 Retirement Payroll Deductions, Docket No. 32, at ¶ 3.

[9] *Id*. at ¶ 7.

[10] Debtors' Chapter 13 Plan, Docket No. 4.

[11] Trustee's Reply Brief in Supp. of Objection to Confirmation, Docket No. 31, at ¶ 16.

tax refunds or may decrease with the allowance of additional attorney's fees.[12] The Court's Claims Register shows four unsecured claims totaling $21,782.14, consisting primarily of credit card debt, and a pro rata distribution of $2,352 on those claims would result in a 10.8% dividend. Over the length of the Plan, the Debtors' retirement contributions would total approximately $32,500.

## III. DISCUSSION

*A. Debtors' Voluntary Retirement Contributions Do Not Constitute Disposable Income*

In this case, the Court is called upon to determine whether voluntary contributions to a qualified retirement plan are excluded from a debtor's disposable income and therefore sheltered from repayment to creditors in the context of a chapter 13 plan. Part of the Court's task involves interpreting additions to the Bankruptcy Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),[13] a far-reaching legislative enactment that has engendered no shortage of exegetical conundrums.

The first step in statutory interpretation is to look at the language of the statute itself.[14] If the language of the statute is clear, "the sole function of the courts is to enforce it according to its terms."[15] But where the statute's plain language ambiguously expresses Congressional intent, courts then turn to the legislative history and the public policy underpinning the statute.[16]

---

[12] *Id*.

[13] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23.

[14] *See, e.g., United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).

[15] *Id.* (citation and internal quotation marks omitted).

[16] *Russell v. United States*, 551 F.3d 1174, 1178 (10th Cir. 2008).

Confirmation of chapter 13 plans is governed by 11 U.S.C. § 1325. If a holder of an allowed unsecured claim or the trustee objects to the plan's confirmation, the court may not approve the plan unless it proposes to pay unsecured creditors in full or "provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan."[17] In this case, the Debtors chose to satisfy the latter option under § 1325(b)(1)—devoting all of their projected disposable income to the payment of unsecured creditors.

Determining whether debtors are contributing all of their projected disposable income is therefore an integral part of the confirmation analysis. While the Bankruptcy Code does not define "projected disposable income," the first step in calculating it begins with computing a debtor's disposable income.[18] In most cases, all that remains is simple arithmetic: a debtor's projected disposable income is "the average of the debtor's disposable income during the six months preceding the bankruptcy filing multiplied by the number of months in the debtor's plan."[19] In unusual cases, however, calculating a debtor's projected disposable income may take into account "changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation."[20]

In turn, "disposable income" is defined as "current monthly income received by the debtor" less "amounts reasonably necessary to be expended" for the maintenance and support of the debtor

---

[17] § 1325(b)(1).

[18] *Hamilton v. Lanning*, 560 U.S. ----, ----, 130 S.Ct. 2464, 2475 (2010). *See also Anderson v. Cranmer (In re Cranmer)*, 697 F.3d 1314, 1317 (10th Cir. 2012).

[19] *Cranmer*, 697 F.3d at 1317 (citing *Lanning*, 130 S.Ct. at 2471, 2475).

[20] *Lanning*, 130 S.Ct. at 2478.

or his dependents, for qualifying charitable contributions, and for necessary business expenditures.[21] "Current monthly income" is calculated by averaging the debtor's monthly income during the 6-month "look-back period."[22] For above-median debtors like the Jensens, the "amounts reasonably necessary to be expended" are determined using the "means test" of § 707(b)(2).

When Congress amended the Code through BAPCPA, it added two provisions particularly relevant to the disposable income inquiry: § 541(b)(7) and § 1322(f). The latter is straightforward and provides that a plan may not materially alter the terms of a retirement plan loan and that "any amounts required to repay such loan shall not constitute 'disposable income' under section 1325."[23]

The former is more complex and states that property of the estate does not include any amount "withheld by an employer from the wages of employees for payment as contributions" or any amount "received by an employer from employees for payment as contributions" to qualified retirement plans, including those under section 457 of the Internal Revenue Code of 1986.[24] Those subparagraphs do not end there, however. They are each followed by a "hanging paragraph" that states "except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2)[.]"[25]

The hanging paragraph has become something of a Gordian knot as courts have sought to unweave its cumbersome grammar and fix its precise meaning. Other courts have recognized the

---

[21] § 1325(b)(2).

[22] § 101(10A).

[23] § 1322(f).

[24] §§ 541(b)(7)(A)(i), (b)(7)(B)(i).

[25] §§ 541(b)(7)(A)(i), (b)(7)(B)(i).

7

interpretive difficulties attendant to § 541(b)(7), calling its text "less than clear"[26] and "oddly-worded."[27]

The majority view—often called the *Johnson* approach after an early decision to espouse this view—interprets § 541(b)(7) to permit voluntary retirement contributions pre- and post-petition to be deducted in the calculation of disposable income.[28] Courts adopting this view tend to attach the greatest significance to the statement that "such amount . . . shall not constitute disposable income," while downplaying the meaning of the words "except that." In addition, these courts reason that the placement of the hanging paragraph within chapter 5 instead of chapter 13 does not diminish its significance because § 1306 "incorporates *all* of § 541 into the definition of estate property in the Chapter 13 case, including those exceptions detailed in subsection (b)."[29] These courts also typically subject the retirement contributions to a good faith analysis under § 1325(a)(3).[30]

The minority view, frequently called the *Prigge* view, holds that § 541(b)(7) completely prohibits a debtor from using post-petition voluntary retirement contributions in the equation for determining disposable income.[31] Decisions in this vein assert that Congress acted deliberately when

---

[26] *In re Egan*, 458 B.R. 836, 843 (Bankr. E.D. Pa. 2011).

[27] *In re Drapeau*, 485 B.R. 29, 34 (Bankr. D. Mass. 2013).

[28] *Baxter v. Johnson (In re Johnson)*, 346 B.R. 256 (Bankr. S.D. Ga. 2006); *In re Drapeau*, 485 B.R. 29 (Bankr. D. Mass. 2013); *In re Egan*, 458 B.R. 836 (Bankr. E.D. Pa. 2011).

[29] *Drapeau*, 485 B.R. at 36.

[30] *See, e.g., Drapeau*, 485 B.R. at 38–39 ("That good faith determination is case-specific and will often turn on whether a debtor has made contributions in similar amounts over an extended period of time.").

[31] *In re Prigge*, 441 B.R. 667 (Bankr. D. Mont. 2010); *Seafort v. Burden (In re Seafort)*, 669 F.3d 662 (6th Cir. 2012); *Parks v. Drummond (In re Parks)*, 475 B.R. 703 (B.A.P. 9th Cir.

it provided, within the context of chapter 13, that retirement loan repayments were excluded from disposable income, but made no such provision for voluntary retirement contributions.[32] Moreover, these decisions emphasize the placement of the hanging paragraph within § 541. They conclude that § 541(b) must be read in conjunction with § 541(a) to describe the property in the debtor's estate as of the commencement of the case. With this limitation in place, the phrase "such amount under this subparagraph" reveals that "the function of § 541(b)(7) was merely to clarify that pre-petition retirement contributions do not constitute property of the estate or post-petition disposable income."[33]

A third view, advocated by the Sixth Circuit Bankruptcy Appellate Panel in its case of *In re Seafort*,[34] interprets the relevant Code sections to conclude that only those voluntary retirement contributions being made at the commencement of the case are excluded from disposable income. Under this view, if debtors are making voluntary retirement contributions on the date of petition, they

---

2012); *In re McCullers*, 451 B.R. 498 (Bankr. N.D. Cal. 2011).

[32] *See Seafort v. Burden (In re Seafort)*, 669 F.3d 662, 672 (6th Cir. 2012) ("The easy inference is that Congress did not intend to treat voluntary 401(k) contributions like 401(k) loan repayments, because it did not similarly exclude them from 'disposable income' within Chapter 13 itself."). At least one case has noted, however, that the provision excluding retirement loan repayments from disposable income is not where one would typically expect it to be: § 1325(b)(2). Instead, it is in § 1322, which deals with what is contained in a chapter 13 plan. In this way, the provisions in § 1322(f) and § 541(b)(7) that deal with disposable income are each out of place, which tends to weaken the argument that particular significance should be attached to the fact that Congress chose to place one in chapter 13 and the other in chapter 5. As the court stated, "their location appears to be driven by the placement of the other provisions dealing with 401(k) loan repayments and 401(k) contributions to which they are appended[.]" *In re Bruce*, 484 B.R. 387, 394 (Bankr. W.D. Wash. 2012).

[33] *Seafort v. Burden (In re Seafort)*, 669 F.3d 662, 673 (6th Cir. 2012)

[34] *Burden v. Seafort (In re Seafort)*, 437 B.R. 204 (B.A.P. 6th Cir. 2010), *aff'd on other grounds*, 669 F.3d 662 (6th Cir. 2012).

9

are permitted to continue them during the life of the plan.

The Court agrees with the reasoning of the Sixth Circuit Bankruptcy Appellate Panel and concludes that voluntary retirement contributions being made as of the date of petition do not constitute disposable income and debtors may continue making those contributions during the life of the plan.[35] The Court also finds that this approach is consistent with the legislative history of the BAPCPA amendments. While Congress expressed a desire that "debtors repay creditors the maximum they can afford,"[36] Congress also stated that BAPCPA allows debtors to shelter some retirement accounts.[37] Therefore, "Congress clearly intended to strike a balance between protecting debtors' ability to save for their retirement and requiring that debtors pay their creditors the maximum amount they can afford to pay."[38]

Applying that conclusion to the facts of this case, the Court determines that the Debtors' voluntary retirement contributions to JoAnn's § 457 plan are not disposable income under section 1325(b)(2).

*B. Debtors' Plan Was Proposed in Good Faith*

A chapter 13 plan must meet the requirements of § 1325(a) to be confirmed, including the requirement that it "has been proposed in good faith."[39] A court examines the totality of the

---

[35] This pronouncement is and must be buttressed by good faith analyses.

[36] H.R. REP. NO. 109–31, pt. 1, at 2 (2005), *reprinted in* U.S.C.C.A.N. 88, 89.

[37] *Id*. *See also In re Egan*, 458 B.R. 836, 849 (Bankr. E.D. Pa. 2011) (stating that Congress's desire to encourage retirement savings predated BAPCPA and motivated some of the changes made by BAPCPA).

[38] *Burden v. Seafort (In re Seafort)*, 437 B.R. 204, 210 (B.A.P. 6th Cir. 2010).

[39] § 1325(a)(3).

circumstances when determining whether a plan has been proposed in good faith.[40] *Flygare* enumerates eleven non-exclusive factors to consider in the good faith inquiry.[41] Since *Flygare* was decided, Congress added § 1325(b) to the Bankruptcy Code, which has narrowed the focus of the good faith analysis.[42] The Trustee argues that even if Debtors' voluntary retirement contributions are excluded from disposable income, the Debtors must satisfy the good faith requirement.

The Debtors rely on the reasoning in *Cranmer* to argue that it cannot be bad faith for them to deduct voluntary retirement contributions from disposable income because the Bankruptcy Code expressly permits them to do so.[43] In response, the Trustee asserts that *Cranmer* is distinguishable based on the differences between voluntary retirement contributions and Social Security income ("SSI").

---

[40] *Anderson v. Cranmer (In re Cranmer)*, 697 F.3d 1314, 1318 (10th Cir. 2012) (citing *Flygare v. Boulden*, 709 F.2d 1344, 1347 (10th Cir. 1983)).

[41] *Flygare*, 709 F.2d at 1347–48 (quoting *United States v. Estus (In re Estus)*, 695 F.2d 311, 316–17 (8th Cir. 1982)). The eleven factors are:

> (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee. *Id.*

[42] *Cranmer*, 697 F.3d at 1319 n.5 (citing *Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987)).

[43] Debtors' Mem. in Supp. of Confirmation Regarding 457 Retirement Payroll Deductions, Docket No. 30, at 9.

*Cranmer* holds that SSI is expressly excluded from the disposable income calculation through § 101(10A), and because projected disposable income incorporates disposable income, SSI is therefore excluded from the projected disposable income calculation as well.[44] After making this determination, the *Cranmer* court addressed the argument of the Chapter 13 Trustee in that case that even if a debtor's SSI does not constitute projected disposable income, the debtor must demonstrate that the retention of that SSI is in good faith. The Tenth Circuit held that "[w]hen a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to, and thereby excludes SSI, that exclusion cannot constitute a lack of good faith."[45]

This principle—that where debtors follow the provisions of the Bankruptcy Code, they cannot be acting in bad faith—is broad, and if extended to its furthest limits, could well eclipse the good faith inquiries employed in many areas of the Code. The Court finds, however, that there are significant differences between SSI and voluntary retirement contributions such that a good faith inquiry is warranted in this case.

First, SSI is a type of income that Congress has deemed shall not be part of a debtor's disposable income. By contrast, voluntary retirement contributions are not income, but rather are taken from a debtor's wages or salary and devoted to a retirement account on a voluntary basis and at the debtor's discretion. This discretion is a crucial difference. A debtor is not at liberty to characterize what is and what is not SSI; whatever he receives as SSI will be excluded from disposable income—nothing more, nothing less. But a debtor does have the ability to take from his

---

[44] *Cranmer*, 697 F.3d at 1317–18 (citation omitted).

[45] *Id.* at 1319.

wages or salary funds that might go to creditors and contribute them to his own retirement plan instead. The word "voluntary" in the term "voluntary retirement contributions" emphasizes the debtor's discretion not only to make the contributions, but also to make them in varying amounts. Therefore, the Court believes that it is appropriate to subject the Debtors' § 457 plan contributions to a good faith inquiry.[46]

The Court concludes, however, that the Debtors' deduction for voluntary retirement contributions does not show bad faith. The Trustee argues that the timing and amount of the deduction show the Debtors' bad faith: the Debtors commenced the contributions fewer than three months prior to bankruptcy, and over the length of the Plan, the Debtors will make approximately $32,500 in retirement contributions while providing an estimated dividend of only 11% on unsecured claims totaling $21,782.14. These facts would implicate the first and tenth *Flygare* factors: the amount of the proposed payments and the amount of the Debtors' surplus and the motivation and sincerity of the Debtors in seeking Chapter 13 relief.[47] In response, the Debtors argue that they were motivated to begin the contributions when they did because JoAnn's sister had recently passed away, leaving her family without any savings, and because the presidential election made them question the future viability of Social Security.[48]

The Debtors' first explanation involves an inferential step that Debtors do not make explicit. If the Debtors began making voluntary retirement contributions after the death of JoAnn's sister

---

[46] *See also In re Shelton*, 370 B.R. 861, 867 (Bankr. N.D. Ga. 2007) (discussing the BAPCPA amendments to § 541(b)(7) and § 1325(b)(2), but noting that these amendments do not necessarily show "that Congress intended to handicap the courts' good faith inquiries").

[47] Trustee's Reply Brief in Supp. of Objection to Confirmation, Docket No. 31, at 9.

[48] Stipulated Facts Regarding 457 Retirement Payroll Deductions, Docket No. 32, at ¶ 9.

because she did not leave her family any savings, the Debtors must have believed that contributing to JoAnn's § 457 retirement plan would be a way to provide funds for their family in the event of their untimely death. While a retirement plan is one way to achieve that goal, taking out a life insurance policy is perhaps a more traditional means to that end. The Debtors do not state why they chose the § 457 plan over a life insurance policy or why they chose to place their savings in a retirement plan rather than in a savings account at a bank.[49]

The Debtors' second explanation provides a plausible reason for their action. On the one hand, any growing problems with Social Security did not become a matter of public knowledge overnight, but on the other hand, the 2012 presidential election did push those problems to the forefront of the national consciousness. The Court makes no comment or finding as to whether the Debtors' concern about the future viability of Social Security has any merit, only that they had a concern that prompted their action.

On the totality of the circumstances, the Court finds that the Debtors proposed their Plan in good faith. When a debtor commences voluntary retirement contributions close to the petition date in an amount that leaves a relatively small dividend to unsecured creditors, the Trustee and the Court will be concerned about the debtor's good faith. While the Debtors' voluntary retirement contributions do have the effect of reducing the return to unsecured creditors, the Court does not conclude that was their motivation for beginning the § 457 plan contributions. Moreover, the Debtors' retirement contributions are in line with Congressional policy to protect and encourage

---

[49] The tax advantages provided by a § 457 plan may have contributed to the Debtors' decision to use it as the vehicle for their future savings. *See Sanchez v. City of Hartford*, F. Supp. 2d 210, 211 (D. Conn. 2000) ("The purpose of Section 457 is to encourage participants to save towards retirement by providing the participants with significant tax benefits.").

retirement savings.[50] Last, Debtors' contributions do not exceed the maximum amount allowed by federal law. Therefore, on the facts before it, the Court does not find bad faith. The Court notes that the finding of good faith is fact-specific and other cases involving contributions to similar plans must be reviewed carefully for justification of the deduction in calculating disposable income.

The Trustee has raised the concern that the Debtors may cease their voluntary retirement contributions once the Plan is confirmed, and that the Trustee lacks the resources to discover such a cessation. In connection with this argument, the Trustee implicitly compares the present situation to that where a debtor purchases a "junkyard car" on the eve of bankruptcy for the apparent sole purpose of maximizing his Form 22C deductions.

Voluntary retirement contributions are readily distinguishable from the purchase of a junkyard car. The former serve the purpose of fortifying a debtor's retirement savings and will presumably continue throughout the length of the bankruptcy plan. The latter, by contrast, is a guise and is designed so that the payments on the car end early in the course of the bankruptcy, allowing the debtor to recoup the phantom payment.

Nevertheless, the Trustee's concern is valid; some debtors may cease voluntary retirement contributions during the life of the plan, and the Trustee should have the information available to detect that change and determine whether it warrants a corresponding change in the plan payment. The Trustee's concern persuades the Court that some additional monitoring should be ordered. Therefore, the Court orders that the Debtors provide the Trustee with their Form W-2 for each year

---

[50] *In re Mati*, 390 B.R. 11, 17 (Bankr. D. Mass. 2008). While Congress's intent to "ensure that debtors repay creditors the maximum they can afford" is an oft-quoted excerpt from BAPCPA's legislative history, Congress also noted that BAPCPA "allows debtors to shelter from the claims of creditors certain education IRA plans and retirement pension funds." H.R. REP. NO. 109–31, pt. 1, at 2 (2005), *reprinted in* U.S.C.C.A.N. 88, 89.

they are in their Plan. Should the Trustee note any changes in the contributions to the § 457 plan or other issues that affect disposable income, the Trustee is certainly at liberty to bring those to the attention of the Court.

## IV.     CONCLUSION

The Court finds and concludes that the Debtors' voluntary retirement contributions being made as of the date of petition do not constitute disposable income. The Court further finds and concludes that the Debtors' Plan has been proposed in good faith, and the Debtors may continue their voluntary retirement contributions for the duration of the Plan. If the Debtors cease making contributions towards their retirement plan during the applicable commitment period, the Trustee may bring a motion to increase the Plan payment or seek other relief. Absent any remaining objections to the Debtors' Chapter 13 Plan, the Plan should be confirmed. A separate order will accompany this Memorandum Decision.

_____ooo0ooo_____
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Robert Todd Jensen
JoAnn Jensen
P.O. Box 2227
Beaver, UT 84713
    *Debtors*

David T. Berry
Leasa M. Tripp
BERRY & TRIPP P.C.
5296 S. Commerce Dr., Suite 200
Salt Lake City, UT 84107
    *Attorneys for Debtors*

Kevin R. Anderson
Ken Garff Bldg.
405 South Main Street, Suite 600
Salt Lake City, UT 84111
    *Chapter 13 Trustee*

Office of the United States Trustee
Ken Garff Bldg.
405 South Main Street, Suite 300
Salt Lake City, UT 84111
    *United States Trustee*